The next case today is Wilfredo Feliciano-Rodriguez versus the United States, appeal number 151964. Mr. Sanchez, whenever you're ready. Good morning, your honor. Chief Judge Howard, we will request two minutes for rebuttal. Yes. Thank you. Your honors, in this case, the inadequacy of counsel Palomares' performance is clear enough, and the only issue we submit before the court is the prejudice from Strickland. And we submit, your honor, that Mr. Feliciano has shown prejudice, including, your honor, venturing into an impossible to win trial without having the facts of what the risk of that meant, your honor. And it's important to keep in mind, bear in mind that Mr. Feliciano at the time was a 23-year-old uneducated man who was represented by an attorney, attorney Palomares, who kept telling him throughout the proceedings, we're going to win a trial. You have a winnable trial. Do not worry. This is part of the process. And as the magistrate judge observed in his report, the prejudice in this case is obvious due to the difference between a life sentence and a 15-year plea agreement. Your honor, two factors never discussed by the magistrate judge is that Mr. Feliciano was never explained by anyone that he was facing life in prison if he went to trial. In fact, your honor, he was never, by attorney Palomares, he was never explained the terms of the plea agreements and the strength of the plea agreements or the weaknesses. Could I question you on that? Because I thought the magistrate found that it was the practice of all magistrates in that court to advise people at the initial arraignment as to the maximum sentence possible and no reason to think that wasn't done here. Thank you, your honor. That's actually one of the speculative findings that we find in this report. How is that speculative? Because, your honor, there's no evidence that at the initial appearance, Mr. Feliciano was informed that he was facing what imprisonment exposure he was facing. Let me just say this. We don't know what magistrate judge Arena's practice was in the initial appearances because he did not handle Mr. Feliciano's initial appearance. But I've been doing initial appearances for years in this district. In fact, I had one last week. And the magistrate judges do not inform at that initial appearance, the defendant, what the imprisonment exposures are. In fact, that is the role of an attorney. That is the basic duty of an attorney, which was breached here by attorney Palomares. So again, when the the fact is he wasn't informed and that is the record on this case. If he was actually advised as to the exposures at the initial appearance, the United States would have presented that transcript. And then what he had a prior attorney, a very good lawyer, who advised him to settle, to accept the settlement. And he turned down the deal. Are we to presume that that lawyer also, in trying to get him to do the settlement unsuccessfully, didn't happen to mention what the penalty was? Well, Your Honor, the only evidence before the court is that that is correct, because the only evidence before the court is what Mr. Feliciano testified, that attorney told him that he was exposed to 40 to 45 years, or maybe 47 years. I can't remember exactly. He was never told by anyone, Mr. Feliciano, that he was exposed to a life sentence, Your Honor. And Your Honor, I submit to the court that whatever attorney McGivern did in terms of this strictly unprejudiced analysis is irrelevant, because we have a new attorney that comes in that tells Mr. Feliciano, a 23-year-old uneducated man, you'll have a winnable trial, Your Honor. And let me, to answer further the court's question, if there was any evidence that Mr. McGivern had advised Mr. Feliciano of the maximum exposures, the United States could have presented it. Maybe they didn't want to bring in attorney McGivern, who happens to be a magistrate judge in this district. I can understand that. But they could have presented the testimony of Vernal Miles, the assistant United States attorney who was handling this case. They could have presented the emails from Vernal Miles to McGivern, or from Vernal Miles to attorney Palomares. But again, for purposes of the prejudice test, whatever McGivern did gets erased and it's irrelevant, because we have a new attorney that comes in, who's telling the client the entire time, you have a case to win a trial. And to address another one of the judge's speculative findings, he states that it is unreasonable and unbelievable to think that McGivern would not discuss the maximum. There's no evidence that McGivern did, Your Honor. And the only evidence is the one on the record, that he did not. He never told Mr. Feliciano that he was facing life, Your Honor. Could I ask you about the thinking? I think what you're positing is you're positing a 23-year-old who, if he'd been told it was life, would have said, I'll take the deal. But if told it's 45 years, would say, oh, well, then 45 years, heck, I'll turn down the deal. Is that what you're advocating? No, Your Honor. What I'm advocating is... That seems to be the picture that you want us to adopt. No, Your Honor. The facts of this case show, and this is one of the errors in the magistrate judge's report, is that attorney Palomares kept saying to Mr. Feliciano, you have a winnable trial, Your Honor. And if Your Honor's go... I understand you've got two things going on here. One is that Palomares said it's a winnable trial. But I think you're also trying to tell us that one of the problems here is that someone, he was only told 45 years, he wasn't told life. Well, that is correct, Your Honor. In other words, in weighing the risks of trial versus... He was never informed, actually. There's a reasonable probability, Your Honor, that if he would have been informed, Mr. Feliciano, and I think that's the way the evidence shows, that he was facing... That if he did not accept the plea agreement, he was going to face life in prison. He would have taken the 15 and a half years. As opposed to... So you're saying the incremental difference between 45 years and life is the dispositive factor that would have caused him to act differently. Your Honor, I think that would be one of the factors, but I don't think you can divorce the fact that you had attorney Palomares pushing the client. And Your Honor, if you go to my reply, where I'm citing a case, Roy versus United States out of the district court of Illinois, the motives up around the attorney Palomares is right there again, Your Honor, where he's pushing a client to go to trial, not because the client has a chance of winning a trial, which is completely unreasonable, but because he wants to get paid more, Your Honor. And there's evidence in this case that after Mr. Feliciano rejected the plea agreement, attorney Palomares asked him for more money, Your Honor. And so, Your Honor, again, the strictly prejudice test is met here because there's an inference running through all the magistrate judges' report that because Mr. Feliciano was a 23-year-old engaged in drug dealing, he didn't really suffer prejudice, Your Honor. And I don't think that's a reasonable inference. I think the most reasonable inference is that because he was engaged in dishonest living, because he was engaged in illegal activities, when he runs into an attorney that tells him this is a game, the justice system is a game, and we're going to be gaming the system, including by telling him when he appears on the video, that's not you. In other words, lie. Your Honor, the inference, the reasonable inference, is that the strictly prejudice test is met with somebody like Mr. Feliciano, who's more prone to be persuaded by an ineffective attorney like Palomares, Your Honor. Are there additional questions from the court? All right, you've reserved some time, Mr. Sanchez. Thank you. Good afternoon, Your Honor. May it please the court, Julia Maconiatis for the government. Now, as a preliminary matter, it's the government's contention that Mr. Rodriguez waived consideration of his petition by failing to object to the magistrate judge's report and recommendation. This court has previously determined that failure to object to report and recommendation precludes appellate waiver, and this rule makes good sense, because such a rule is important. It prevents litigants from sandbagging the district court. If Mr. Feliciano was not in agreement with the district, excuse me, with the magistrate judge's prejudice determination, an objection would have flagged this issue for the district court, who could have either looked at the to get that issue straight. And then, of course, if Mr. Feliciano was unsatisfied, he could petition this court for a certificate of appealability. And the mere fact that this court granted a certificate of appealability does not, by its own terms, excuse this failure. A certificate of appealability is just the jurisdictional requirement to see whether this court would consider the case. It doesn't answer it on the merits. So it's the government's position that not only did he fail to do it below, but also on appeal, he failed to recognize in the opening brief, despite the fact the government had flagged the issue in a motion for summary disposition, the failure to object to the magistrate's finding of prejudice in the report and recommendations. It does seem a little odd that we would turn down a Strickland claim because of a goof by counsel in bringing the claim on not objecting to the report. Your Honor, as the Supreme Court has explained in full candor, it can be excused in the interest of justice. However, the importance of flagging issues for the district court so that they will no longer be sandbagged and can take this very issue, it would have made an even better record for your honors to be able to look at this very claim had it been flagged below. But moving to the merits, here it all boils down to prejudice, as your honors are well aware. And the prejudice determination here boils down to the factual findings that were made by the magistrate judge largely upon his credibility determinations of Mr. Feliciano. And the district ultimately adopted the magistrate judge's report and recommendation. And it held that despite any deficiencies in Palomares' performance, Feliciano knowingly and intelligently chose to go to trial. And when you look at the record as a whole, because when you have to show prejudice, it can't just be a vacuum of what Mr. Palomares did. But why should we look at what the first attorney did or didn't do? Particularly when you think about the timeline here, right? Mr. McGivren, I think, is only in this case for six months. By the time of the presentation of the plea offer by Mr. Palomares, it's actually, I think, 10 months later. And it's a year later to trial. Why should we look at all to what the first attorney said or didn't say? Your Honor, it is an important consideration because it shows the thought process of this defendant from the beginning. And it also helps us gauge his credibility. For example, during the evidentiary hearing, he had stated that part of the reason he got a new attorney was because of a language barrier with then-attorney McGivren. But the truth of the matter is he had filed a pro se filing with a district court in Spanish. The translation has included in an addendum to our brief where he was just unhappy with Mr. McGivren's recommendation that he take the plea. He wanted to go over the videos. He wanted to talk about a strategy of defense. He almost accused Mr. McGivren of pushing the government's offer too hard and not wanting to work for his benefit. Then, conveniently, in the evidentiary hearing, it's just a language barrier. I guess my point is particularly here where I think the uncontested record is that Mr. Palomero perhaps has a sunnier view of his likelihood of success at trial, which has already been found to be deficient. Why doesn't that exchange cut off anything the prior attorney might or might not have said about either his exposure, about the strength of the case, or about whether or not he should have taken the plea? Well, because in this case, too, at a very minimum, Mr. Palomero explained to him, look at this 40 to 47 range. And again, this is us extrapolating, but it's basically the mandatory minimums of each of the counts. You have the mandatory 10 for drugs, the possibility of a 5 for a firearm, and then 25 for a second 924C. And Mr. Feliciano explained that both attorneys had given him that range. And he also said that he wanted both attorneys to look for a 12-and-a-half-year deal because he believed another co-defendant with a similar role was given a 12-and-a-half-year deal. So he was willing to put the 40 to 45 minimums on the line to secure a 12-and-a-half-year deal. And not only that, you have, for what it's worth, on the record at the aborted change of plea hearing, Mr. Palomero stayed to the district, to the magistrate judge at that moment, that he was proceeding to trial contrary to counsel. Now, that's the only thing we have on the record of Mr. Palomero because he did not testify at the hearing. But to the extent that there are, at least on the record, two attorneys who present him a 15-year offer. And to the two attorneys, he said he wanted 12-and-a-half-year offers. Both attorneys, at some point in time, recommended he take the offer. We have that on the transcript of the aborted change of plea hearing. Given all of the testimony, ultimately, the magistrate judge found that Mr. Feliciano was not credible. He found that his assertions were illusory and inconvenient. Now, and when you look at when he was trying to paint this picture that he needed more time, Mr. Feliciano told the magistrate judge during the evidentiary hearing that he told the magistrate judge during the aborted change of plea hearing that he wanted to discuss this with his family, that he needed more time because he's trying to create this narrative. But review of that transcript shows that no such interaction happened. The review of the transcript shows that the case was called. Mr. Palomero said, against the advice of counsel, he's proceeding to trial. And the magistrate judge said, okay, we'll send it back to the district court. So there have been instances on the record that magistrate judge saw and was able to question the credibility of this individual who had received an offer. And then given the practice of what the magistrate judge had explained was during the hearings, explain the mandatory maximums and minimums. And there's also another part of the record that supports the court's finding that he, in fact, knew he was subject to a life sentence. If we look what happened at the sentencing hearing, the first sentencing hearing, you have the district court ask whether the PSR had been explained to the defendant. And it had. And the PSR included the correct statutory maximum. And then he's being assisted by a courtroom interpreter. Mr. Palomero gets on the record and discusses a collateral case in front of another judge and said that the leaders there got 230 months. And if this court was going to consider a life sentence, take that into consideration. So at the sentencing hearing, Mr. Palomero has been braced up the possibility of a life sentence. But that's all after the fact, right, counsel? It is after the fact, but it's important for the reason I'd like to discuss right now, Judge Casper, because during his elocution, this defendant took the opportunity to talk to the apparent anomalies that happened during his trial. So when something upset him, he discussed it with the district court. He had said that a juror was making eye contact with the government's agents sitting at the table. He was bringing up these issues that he was upset with. And that can specifically be found on page, if you will excuse me, on page six and seven of the sentencing hearing transcript. When he was upset about something at a sentencing hearing, he told the court that the agent was making eyes with a juror. I thought I saw them talking in the hallway. If he was really uncertain that he was going to have a life sentence, he didn't know that this was going to happen. Counsel mentioned it in the introduction before his elocution. He didn't say anything about it then. He affirmed his innocence and then admitted at the evidentiary hearing that he was lying about that too, that he in fact was in the video recording. So the magistrate judge had multiple instances of where this individual lacked candor, making his credibility determination even stronger. Yes, Your Honor. Could you share your thoughts with me on what is a puzzling conundrum to me about these cases? His basic claim, putting aside the life sentence issue, his basic claim is that he had an unwinnable case. He was going to lose for sure, but his lawyer deceives him into going ahead and thinking he had a chance. So he tried the case and that was malpracticed by the lawyer. If we were to agree with that and then vacate and remand, unless the court below could force the United States to re-extend the settlement offer, all he would then get is a trial. And yet that would be the trial that we've already decreed he was crazy to go through because he was certainly going to lose. So I'm not sure how the remedies, if you have any view on if we should, and I'm not saying we would, but if we should vacate, what happens on remand? Your Honor, it's our position that no vacation of this conviction is necessary because there was no prejudice, but Your Honor is also not taking into consideration the possibility of a straight plea where he would have a minus three for acceptance of responsibility in this case. Also, it's important to note that down the line, the second 924C conviction was vacated because it was within the same conspiracy. So in theory, he's facing a very different panorama now and the minus two, which he already received for the 782. I see that my screen is frozen. I just want to make sure that Your Honors are able to still hear me. We can hear you. Counsel, my recollection is that we have had at least a handful of cases where the assertion is that the person should be and that we have done that in some instances, haven't we? Your Honor, in full candor to the court, I believe so, but I cannot say so with certainty. Okay, yeah. It may be dependent on the circumstances too. But ultimately, Your Honors, this case comes down to, like we said, the prejudice prong and it all has one time explained in very specific terms. Finding clear error, especially on these factual determinations, the record needs to smell like five day old unrefrigerated fish. Looking at all of the inconsistency in Mr. Feliciano's testimony, the fact that two attorneys offered him a deal, the fact that at the evidentiary hearing, he said that he just wanted a better deal, that he was willing to throw everything away and take 45 years if he had gotten 12 and a half years. So those two and a half years made a huge difference in his mind. We'll hear from Mr. Sanchez on rebuttal now. Yes, thank you, Your Honor. Good morning again, Your Honors. Your Honors, the distinguished AUSA is mentioning credibility determinations. There are no credibility determinations in the report. What it is, is speculation not supported by the evidence. Let me go to one example. The magistrate held that it is hardly credible that defense counsel would have filed a motion for a change of plea without first having spoken to petitioner. Well, Your Honor, the evidence shows that that is exactly what happened. Because if you look at the evidence presented by the United States at the hearing, which is visiting log at MDC of attorney Palomero's visits, attorney Palomero's files the motion for a change of plea on October 4th, 2005, but he has not visited his client since July of 2005. So it is completely consistent with the only evidence on the record, which is Mr. Feliciano's testimony. And it's very reliable that he was surprised that he was being taken to court and that he's informed their court that by Palomero's that there's a 15 and a half year plea agreement. And this is what Palomero's tells him. You should take it or we go to trial. When in fact there was, there was no reason why Palomero's could have not kept trying to negotiate. And I submit again, Your Honor, I understand the United States has no burden here, but they could have rebutted Mr. Palomero's Mr. Feliciano's testimony, which an email, for example, showing that Palomero's tried to negotiate a better plea deal or some plea deal. No evidence was presented because Mr. Palomero's did nothing, Your Honor. And that's where the prejudice comes in because the United States refers to a knowing and intelligent decision by this 23 year old uneducated man. First, it was not knowing and it was not intelligent because he did not know the risk that he was facing, Your Honor. Furthermore, Your Honor, in Missouri versus Frye, the court held clearly that even knowing involuntary plea does not supersede an error by defense counsel. And I submit that applies also to the decision to go to trial. This defendant was never informed of the risk that he was facing. And this defendant was never informed of the strength and the weaknesses of filing a plea agreement by Mr. Palomero's who was his attorney because Mr. Palomero's kept telling him, go to trial. You're going to win, Your Honor. Thank you, counsel. Thank you very much, Your Honor. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.